UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ECF CASE ( LAK )

| | |
|---|---|
| JOHN ROGATI, on behalf of himself and a class of persons similarly situated,<br><br>                       Plaintiff,<br><br>      -against-<br><br><br>ANDREA JUNG, SUSAN J. KROPF, ROBERT J. CORTI, AVON PRODUCTS, INC., THE RETIREMENT BOARD OF AVON PRODUCTS, INC., JP MORGAN CHASE BANK AND JOHN DOES 1-50 (BEING CURRENT AND FORMER MEMBERS OF THE AVON PRODUCTS, INC. RETIREMENT BOARD),<br><br>                     Defendants. | Civil Action No.:<br><br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF ERISA**<br><br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff John Rogati, on behalf of the Avon Products, Inc. Personal Savings Account Plan and the Avon Products, Inc. Personal Retirement Account Plan (collectively, the "Plan"), and on behalf of himself and a Class of all others similarly situated, alleges the following on personal knowledge as to facts pertaining to Plaintiff and on information and belief as to all other facts:

## I.

## NATURE OF THE ACTION

1.  Plaintiff brings this action for plan-wide relief on behalf of the Plan and as a class action on behalf of a class of all participants in the Plan for whose individual accounts the Plan purchased or held Avon Products, Inc. ("Avon" or the "Company") securities from July 28, 2004 to the present (the "Class" and the "Class Period", respectively).

2.     At all relevant times, Plaintiff was an Avon employee and was a participant in, and beneficiary of, the Plan.  As a participant in the Plan, Plaintiff was entitled to set aside a certain percentage of his annual base salary and invest those funds through the Plan.  Avon matched each participant's contribution with Avon stock and encouraged Plan participants to purchase and hold as much of the Avon stock as possible.  Plaintiff also received Avon common stock and options as a form of compensation from Avon.

3.     During the Class Period, based in part on positive statements by Avon and the Individual Defendants, participants allocated significant amounts of their individual contributions to Avon stock and maintained their assets in that stock.

4.   As more fully set forth below, Defendants were fiduciaries who, rather than acting prudently and solely in the interest of the Plan and its Participants and beneficiaries, failed to protect the Plan from huge losses - even though they should have known that investing in Avon stock was an imprudent investment for the Plan.

5.   Plaintiff brings the action pursuant to Section 502 of the Employee Retirement Income Security Act, as amended ("ERISA"), 29 U.S.C. §1132, against fiduciaries of the Plan who are and were responsible for the investment of its assets and its administration.

6.     Defendants breached their fiduciary duties by:

(a)     offering Avon common stock as a Plan investment option and permitting the Plan to buy and hold Avon shares when those shares were imprudent investments;

(b)     negligently misrepresenting and negligently failing to disclose information necessary for participants to manage Plan assets and make informed decisions concerning the investment of their individual Plan accounts; and

(c)     failing to monitor the activities of other fiduciaries.

7.     Defendants also breached their fiduciary duties to Plan participants by issuing a series of materially false and misleading public statements about Avon's businesses, as well as its financial prospects and results, causing Avon stock to trade at artificially inflated levels during the Class Period and causing the stock price to fall when the market began to learn the truth about Avon's problems.

8.     Throughout the Class Period, Defendants failed to disclose material facts about Avon's business operations, including material problems with its business in China, Russia and Central Europe.  In particular, Defendants knew but failed to disclose that the Company's growth had slowed significantly in China, Russia, Central Europe and Eastern Europe and that Beauty Boutique owners in China were resisting the Company's introduction of commissioned representatives into their territory.  As a result, Defendants failed to disclose a material risk to Avon's business.

9.     Upon information and belief, before and during the Class Period, Defendants and others within Avon were discussing the significant problems that Avon faced with its business and had proposed cost-cutting measures to help Avon weather its financial problems and they developed a plan to suspend the Company's matching contributions to the Plan.  From internal reports and other documents, defendants were aware of Avon's financial problems but failed to disclose these problems to Plan participants.

10.     At the same time, Defendants and other Avon insiders were selling shares of their own Avon stock for more than $40 million in proceeds without disclosing material, adverse facts about Avon and its business problems.  Defendant Jung sold more than $33 million of Avon

stock; Defendant Kropf sold more than $9 million of Avon stock and Defendant Corti sold more than $9 million of Avon stock all without disclosing material, adverse information.

11.     Only after Defendants completed these sales did Avon issue a press release on July 19, 2005 disclosing some of the problems that Avon was experiencing, including that its revenue growth had declined significantly in China, Central and Eastern Europe and Russia.

12.     In response, Avon's stock price plummeted to trade at approximately $35 per share, a price that is significantly less than the prices at which Avon's common stock traded during the Class Period.

13.     Since the Plan's holdings in Avon stock comprised a significant percentage of the overall value of the assets the Plan held on behalf of its beneficiaries, the long-term retirement savings of Plaintiff and members of the Class were dependent, to a substantial degree, on the performance of Avon common stock. So too were their retirement fortunes dependent on the related need for prudent fiduciary decisions by Defendants concerning such a large, ongoing investment of Plan assets.

14.     As a result of Defendants' breaches of their fiduciary duties, the Plan, Plaintiff and members of the Class have suffered substantial losses of retirement savings and anticipated retirement income from the Plan. As such, under ERISA, Defendants are obligated to restore to the Plan the losses that resulted from their breaches of their fiduciary duties.

## II.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

16.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this District, some or all of the fiduciary breaches for which relief is sought occurred in this District, and some Defendants reside or maintain their primary place of business in this district.

## III.

## THE PARTIES

17.     At all relevant times, Plaintiff was an employee of Avon who participated in the Plan pursuant to ERISA § 3(7), 29 U.S.C. § 1102(7) and invested in Avon stock for his retirement account.

18.     Defendant Avon is a New York corporation with its principal executive offices located at 1345 Avenue of the Americas, New York, New York.  During the Class Period, Avon had more than 451 million shares of common stock outstanding that were traded on the New York Stock Exchange.

19.     At all relevant times, Avon was the Plan sponsor and administrator and exercised discretionary authority over the Plan, acting through its Board of Directors and officers, including the Individual Defendants and Avon's Retirement Board, to manage and administer the Plan.

20.     During the Class Period, Avon had effective control over the activities of its officers and employees, including their Plan-related activities and Avon had the authority and discretion to hire and to terminate its officers and employees who were responsible for administering the Plan.

21.     Avon also had the authority and discretion to appoint, monitor, and remove officers and employees from the Plan's individual fiduciary roles.

22.     At all relevant times Defendant Andrea Jung was Avon's Chief Executive Officer and was a director of the Company.  Jung is a fiduciary of the Plan within the meaning of ERISA §3(21)(A), 29 U.S.C. § 1002(21), in that she exercised discretionary authority or control with respect to:  (i) managing and administering the Plan and (ii) managing and disposing of the Plan's assets.

23.     During the Class Period, while in possession of material, non-public adverse information about the problems that Avon was having, defendant Jung sold large amounts of her Avon stock without disclosing the material, adverse information:

a)      On August 6, 2004 defendant Jung sold 410,000 shares for proceeds of $17,220,000;

b)      On August 6, 2004 defendant Jung exercised options on 195,000 Avon shares at $17.62 per share and immediately sold those shares at $42.0179 per share for proceeds of $8,193,490;

c)      On August 9, 2004 defendant Jung exercised options on 125,000 Avon shares at $17.62 per share and immediately sold those shares at between $42.27 and $42.75 per share for proceeds of $5,314,000;

d)      On August 10, 2004 defendant Jung exercised options on 90,000 Avon shares at $17.62 per share and immediately sold those shares at between $43.2548 and $43.36 per share for proceeds of $3,898,000.

24.     Defendant Susan J. Kropf was at all relevant times the Company's President and Chief Operating Officer.  Defendant Kropf was a fiduciary of the Plan within the meaning of ERISA §3(21)(A), 29 U.S.C. § 1002(21), in that she exercised discretionary authority or control

with respect to: (i) managing and administering the Plan; and (ii) managing and disposing of the Plan's assets.

25.     While in possession of material, non-public adverse information about Avon, defendant Kropf sold 220,000 shares of Avon stock on February 9, 2005 for proceeds of approximately $9,968,502 without first disclosing that information.

26.     Defendant Robert J. Corti ("Corti") was at all relevant times Avon's Executive Vice President and Chief Financial Officer. Defendant Corti was a fiduciary of the Plan within the meaning of ERISA §3(21)(A), 29 U.S.C. § 1002(21), in that he exercised discretionary authority or control with respect to: (i) managing and administering the Plan; and (ii) managing and disposing of the Plan's assets. Defendant Corti signed the Plan's Form 11-K filed with the SEC on or about June 29, 2005.

27.     While in possession of material, non-public adverse information about Avon, Defendant Corti sold 204,224 shares of Avon stock for proceeds of $9,073,468 on February 3, 2005 without first disclosing that information.

28.     Defendants Jung, Kropf and Corti are referred in this Complaint as the "Individual Defendants".

29.     Upon information and belief, the Individual Defendants were senior Avon employees who knew or should have known all material public and non-public information concerning Avon's business and operations that were relevant to the appropriateness of Avon's common stock as a Plan investment.

30.     Defendant Retirement Board of Avon Products, Inc. is comprised of Avon officers, directors and employees who participated in administering the Plan.

31.     Defendant JP Morgan Chase Bank (the "Trustee") is incorporated under the laws of Delaware and maintains its corporate headquarters at 3 Chase MetroTech Center, 5th floor, Brooklyn, New York 11245-0000. At all relevant times, JP Morgan Chase Bank was the trustee for the Plan and was authorized to receive contributions and provide custody and investment services for all Plan assets.

32.     Plaintiff is unaware of the true names and capacities of the remaining Defendants sued in this action by the fictitious names DOES 1 through 50. Plaintiff will amend this Complaint when Plaintiff learns the names and capacities of those Defendants. Plaintiff is informed and believes that each of the fictitiously named Defendants is in some manner responsible for the events that have damaged plaintiff, the Plan and the Class.

## IV.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action, pursuant to Rule 23(a), (b)(1), and (b)(2) of the Federal Rules of Civil Procedure, on behalf of himself and all others similarly situated participants in or beneficiaries of the Plan during the Class Period from July 28, 2004 through the present. The Class excludes Defendants as well as members of their immediate families, and Defendants' heirs, successors and assigns.

34.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are, at a minimum, several hundred members of the Class who participated in, or were beneficiaries of, the Plan during the Class Period.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     Whether Defendants each owed a fiduciary duty to Plaintiff and the Class;

(b)     Whether Defendants breached their fiduciary duties to Plaintiff and the Class by failing to act prudently and solely in the interests of the Plan's participants and beneficiaries;

(c)     Whether Defendants violated ERISA; and

(d)     Whether Plaintiff and members of the Class have sustained damages and, if so, what is the appropriate measure of those damages.

36.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the Class members each sustained damages arising from Defendants' wrongful conduct in violation of ERISA.

37.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class action and complex litigation under federal law.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38.     Class action status in this ERISA action is warranted under Fed.R.Civ.P. 23(b)(1)(B) because prosecution of separate actions by individual members of the Class would create the risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the action, or substantially impair or impede their ability to protect their interests.

39.     Class action status is also warranted under the other subsections of Fed.R.Civ.P. 23(b) because:

(a)     Prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants;

(b)     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory or other appropriate equitable relief with respect to the Class as a whole; and

(c)     Questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

40.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, because the injury suffered by the Individual Class members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Class members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

41.     There are one or more putative or certified securities class action cases pending in this District against Avon and certain other Defendants. The claims in this action are brought pursuant to ERISA and related principles of federal common law and are not being asserted by the plaintiffs in those other class actions. The named plaintiffs in those class actions do not adequately represent Plaintiff or the Class in this Action with respect to ERISA claim, and may be subject to defenses, stays of discovery, heightened pleading requirements and limitations of liability under the Private Securities Litigation Reform Act, 15 U.S.C. § 77z-1(b), and other statutes and rules that do not apply to the claims asserted in this Complaint. Furthermore, the shareholder plaintiffs in the securities actions lack standing under § 502(a) of ERISA, 29 U.S.C.

§ 1132(a), to bring an action on behalf of the Participants of the Plan for Defendants' fiduciary breaches.

## V.

## **THE PLAN**

42.    The Plan is an "employee pension benefit plan" as defined by §§ 3(3) and (3)(2)(A) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(2)(A).  The Plan is a legal entity that can sue or be sued.  ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1).  In this action for breach of fiduciary duty, the Plan is neither a plaintiff nor a defendant.  Rather, Plaintiff requests relief for the benefit of the Plan and for the benefit of its participants.

43.    The Plan is a "defined contribution plan" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provides for individual accounts for each Participant and for benefits based solely upon the amount contributed to the Participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participant's accounts. Consequently, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account.

44.    All full-time employees of Avon are eligible to participate in the Plan from their date-of-hire and all part-time employees are eligible to participate once they have completed one year of service.

45.    Avon employees may contribute into the Plan from one-percent to twenty-five percent of their qualified compensation.  In 2004 Avon matched contributions at a rate of $1.00 for every $1.00 of participant contributions up to the first three percent of eligible compensation, and $0.50 for each $1.00 contributed from four percent to six percent of eligible compensation.

46.    The matching contributions are made in cash, which is then used to purchase shares of Avon common stock in the open market.  In 2003, the Plan invested $265 million to purchase Avon common stock and in 2004 it invest $280 million to purchase Avon common stock for the Plan and its participants.

47.    Each participant's account is credited with the participant's contribution and receives an allocation of the Company's contribution, the Plan's earnings, and an allocation of administrative expenses.

## VI.

## DEFENDANTS' FIDUCIARY STATUS

48.    ERISA imposes strict fiduciary duties upon plan fiduciaries.  ERISA 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefits to participants and their beneficiaries, and defraying reasonable expenses of administering the plan; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

## A.    The Duty Of Loyalty

49.    ERISA imposes on a plan fiduciary the duty of loyalty - that is, the duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their

beneficiaries . . . ." The duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye-single" to the interests of the participants and beneficiaries, regardless of any other interests, including those of the fiduciaries themselves or the plan sponsor.

### B.    The Duty Of Prudence

50.    Section 404(1)(a)(B) imposes on a plan fiduciary the duty of prudence - that is, the duty "to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . "

### C.    The Duty To Inform

51.    The duties of loyalty and prudence include the duty to disclose and inform. These duties entail: (1) a duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries. These duties to disclose and inform recognize the disparity that may exist, and in this case did exist, between the training and knowledge of the fiduciaries, on the one hand, and the Participants, on the other.

52.    Pursuant to the duty to inform, at all relevant times, fiduciaries of the Plan were required under ERISA to furnish certain information to Participants. For example, ERISA § 101, 29 U.S.C. § 1021, requires the Plan's Administrator to furnish a Summary Plan Description ("SPD") to Participants. ERISA § 102, 29 U.S.C. § 1022, provides that the SPD and all information contained or incorporated in it constitutes representations in a fiduciary capacity

upon which Participants are entitled to rely in determining the identity and responsibilities of fiduciaries under the Plan and in making decisions concerning their benefits and the investment and management of Plan assets allocated to their accounts:

> The format of the summary plan description must not have the effect of misleading, misinforming or failing to inform participants and beneficiaries. Any description of exceptions, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant. Such exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits. The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations . . . .

29 C.F.R. § 2520.102-2(b).

**D.**    **The Duty To Investigate And Monitor Investment Alternatives**

53.    With respect to pension plans such as the Plan, the duties of loyalty and prudence also entail a duty to conduct an independent investigation into, and to continually monitor, the merits of the investment alternatives in the Plan, including employer securities, to ensure that each investment is a suitable option for the Plan.

**E.**    **The Duty To Monitor Appointed Fiduciaries**

54.    Fiduciaries who have the responsibility for appointing other fiduciaries have the further duty to monitor the fiduciaries who are appointed. The duty to monitor entails both giving information to and reviewing the actions of the appointed fiduciaries. The monitoring fiduciaries must therefore ensure that the appointed fiduciaries:

(a)    possess the needed credentials and experience or use qualified advisors and service providers to fulfill their duties;

(b)    are provided with adequate financial resources to do their job;

14

(c)     have adequate information to do their job of overseeing the Plan investments with respect to company stock;

(d)     have access to outside, impartial advisors when needed;

(e)     maintain adequate records of the information on which they base their decisions and analysis with respect to Plan investment options; and

(f)     report regularly to the monitoring fiduciaries.

The monitoring fiduciaries must then review, understand, and approve the conduct of the hands-on fiduciaries.

### F.    **The Duty To Disregard Plan Documents**

55.    A fiduciary may not avoid his fiduciary responsibilities by relying solely on the language of the plan documents. While the basic structure of a plan may be specified, within limits, by the plan sponsor, the fiduciary may not blindly follow the plan document if to do so leads to an imprudent result. ERISA 404(a)(1)(d), 29 U.S.C. § 1104(a)(1)(D).

### DEFENDANTS WERE FIDUCIARIES OF THE PLAN

56.    ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." ERISA § 402(A)(1), 29 U.S.C. § 1102(a)(1). Under ERISA, a person is a fiduciary if he is designated a "named fiduciary" under ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1). Additionally, to the extent that a person is delegated responsibilities under the Plan or a procedure specified in the Plan, he is a named fiduciary under ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2).

57.    A person can also be a de facto fiduciary as a result of his authority or control over the plan under the very broad definition of "fiduciary" set forth in ERISA at § 3(21)(A), 29 U.S.C. § 1002(21)(A). A person or entity is a fiduciary even if the plan does not name him as

such or by its terms assigns fiduciary duties to him where, by his conduct, he engages in fiduciary activities. Thus, those who have discretionary authority over administering or managing the Plan or who exercise authority or control over the Plan's assets are fiduciaries regardless of the labels or duties that the Plan's language assigns to them.

### A.    Avon And Its Retirement Board Were Fiduciaries Of The Plan

58.    As set forth on the Plan Forms 5500 filed with Department of Labor ("DOL") and the Internal Revenue Service ("IRS"), Avon and its Retirement Board were the Administrators of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1022(16)(A).

59.    Avon was also a fiduciary because it was responsible for disseminating to Participants the Summary Plan Descriptions.

60.    Avon was also a fiduciary because it was responsible for disseminating to Participants the Plan prospectus (individually and collectively, "Prospectus") which purported to describe the investment characteristics of Plan investment options. The Prospectus and all information contained or incorporated in it constitutes a representation disseminated in a fiduciary capacity upon which Participants were entitled to rely in making decisions concerning their benefits and investment and management of Plan assets allocated to their accounts.

61.    The Prospectus for the Plan also incorporated by reference Avon's SEC filings.

62.    Avon's SEC filings were part of the SPD and the Prospectus. Avon exercised discretion over the contents of the SPD and the Prospectus it disseminated which were intended to communicate to Participants information necessary for Participants to manage their retirement benefits under the Plans.

63.     Avon was not required to cause the Plan to offer Avon stock as an investment option under the Plan or to incorporate all of Avon's SEC filings into the Plan's documents, but once it elected to do so, it made the disclosures in those documents in a fiduciary capacity.

64.     Avon was also a fiduciary to the extent that its employees served on the Plan's Committees.  On information and belief, all Plan committee members (including members of Avon's Retirement Board) were Avon employees who served at the pleasure of the Avon Board without additional compensation.  Based on these facts, Avon had control over the actions of the committees (including the Retirement Board) and their members and is liable for their actions.

65.     Avon was also a fiduciary during the Class Period because its Board of Directors was a fiduciary during that time, as alleged below, and the Board is, by definition, an agent of the corporation.

66.     Avon was also a fiduciary because it made direct representations to Participants relating specifically to the Plan's investment options, the business and financial condition of Avon, and the merits of investing Plan assets in Avon stock and those representations were intended to communicate to Participants information necessary for Participants to manage their retirement benefits under the Plan.

**The Individual Defendants Were Fiduciaries Of The Plan**

67.     The Individual Defendants were Plan fiduciaries because the Board of Directors was, at all relevant times, responsible for appointing members to committees that were authorized to administer the Plan.  The Board had the authority to remove any committee member, with or without cause.  In connection with these responsibilities, the Directors of Avon had a duty to appoint persons with sufficient education, knowledge and experience to inform

themselves as necessary to perform their duties and to evaluate the merits of the Plan's investment options.

68.     The Directors had an ongoing duty to ensure that the persons appointed were performing these duties with respect to the selection of investment options and the investment of Plan assets.

69.     Finally, the Directors had a duty to convey information necessary for the appointees to perform their duties.

70.     As a consequence of these duties owed by Avon's Board of Directors, the Board and its members were fiduciaries to the Plan.

### The Trustee

71.     The Trustee (Defendant JP Morgan Chase Bank) had the exclusive authority to manage and control the assets of the Plan.

72.     Furthermore, the Trustee had a fiduciary duty, arising from its capacity as trustee, to investigate the advisability of investing in Avon common stock to insure that such investment was in compliance with the terms of the Plan and the provisions of ERISA.

### All Of The Defendants Were Co-Fiduciaries

73.     Each Defendant is liable for the breaches of fiduciary duty of the other Defendants under ERISA § 405, 29 U.S.C. § 1105.

### VII.

### SUBSTANTIVE ALLEGATIONS

### Background

74.     Avon manufactures and markets beauty products primarily in North America, Latin America, Europe, and Asia.  Its products are classified into three categories: (i) Beauty,

which consists of cosmetics, fragrances, skin care, and toiletries; (ii) Beauty Plus, which includes

fashion jewelry, watches, apparel, and accessories; and (iii) Beyond Beauty, which comprises

home products, gift and decorative products, candles, and toys.

75.    The Company sells its products principally through a combination of direct

selling and marketing by independent Avon representatives, as well as through its consumer Web

site.

### Materially False And Misleading<br>Statements Issued During The Class Period

76.    Throughout the Class Period, Avon and the Individual Defendants repeatedly

issued materially false and misleading statements that omitted to disclose or misrepresented the

strength of Avon's business and failed to disclose the material problems that Avon was having

with its business, particularly in China, Russia and Central Europe.  Instead, defendants

repeatedly portrayed the Company as delivering "stand-out growth" and on a path of continuing

growth.

77.    At the same time that defendants were creating demand for Avon's stock and

positively portraying Avon's business, certain Individual Defendants and high-level Avon

officers were selling millions of dollars of their own Avon stock for their own benefit.

78.    The Class Period begins on July 28, 2004, when defendants caused Avon to issue

the first of a series of press releases that positively but falsely portrayed Avon's business.  In that

press release, the Company reported that earnings in the second quarter of 2004 increased 36%

and it raised earnings expectations for the full-year 2004 based in part on "exceptional strength

in the company's international operations".

79.    The press release quoted defendant Jung's comments on the quarter:

> Avon's second quarter performance again illustrates a very exciting top-line growth story, with sales, units and active Representatives all growing at near-record rates. We're especially pleased that Beauty sales grew in the high teens, and have now grown faster than overall sales for eight consecutive quarters, demonstrating the sustainability of our strategies to drive consistent growth in our global Beauty business.
>
> In addition, our international regions performed above expectations, with Europe, Latin America and Asia Pacific all generating double-digit gains in sales, operating profit, units and active Representatives. "While overall U.S. sales were 3%, we're very encouraged by the continuing strength in Beauty sales and solid growth in active Representatives, our most critical strategic indicators."
>
> Avon's second quarter results also reflect the continuing impact of Business Transformation, with all geographic regions generating significant benefits from ongoing supply chain initiatives.

80.     On August 5, 2004 Avon declared a quarterly dividend of $0.14 per share which positively reflected on the state of Avon's business but falsely conditioned the market to believe that Avon's business was strong and would continue to grow. Avon's stock price reacted favorably to this positive news and climbed to more than $45 per share.

81.     The next day defendant Jung began selling her shares of Avon stock on the open market without disclosing material, adverse information about the problems that the Company was having, including problems with its international business.

82.     In the first half of August, 2004 alone, defendant Jung sold approximately 800,000 shares of Avon stock for more than $33,000,000 in proceeds.

83.     The Company and the Individual Defendants then continued to issue press releases and other public statements that falsely portrayed the Company's prospects and omitted to disclose material information about problems that the Company was facing, particularly with its overseas business.

84.    On September 8, 2004 the Company issued a press release that provided earnings guidance for the third quarter of 2004 and the full year.  Defendants reported that the Company's earnings for the third quarter of 2004 were expected to increase 21% to $0.34 per share and full-year earnings were projected to be up 24% to $1.72 per share:

> Commenting on the outlook, Andrea Jung, Avon's chairman and chief executive officer, said, "On a consolidated basis, our business in the third quarter is demonstrating continued double-digit strength across every key performance metric.  Our international regions are each expected to generate double-digit gains in local currency sales, units and active Representatives. Operating profit should be up strongly as well, and overall, international operations should post operating margin expansion of over 200 basis points in the third quarter.  This robust strength in our international business portfolio is fully offsetting softness in the U.S., where lower-than-expected consumer response to recent brochure offers is impacting results.

> * * *

> The Europe region is again generating exceptional results in the third quarter, driven by continuing high growth rates in the markets of Central and Eastern Europe, where sales are projected to increase over 40%.  Russia is once more turning in an outstanding performance, with sales trending up over 70%. . . . Overall, Europe's third quarter sales should grow in the range of 30% in dollars and over 20% in local currencies, and dollar-denominated operating profit is forecast to increase more than 50%, better than expected.

> * * *

> The Asia/Pacific region is also exceeding earlier projections in the quarter. Both dollar and local-currency sales are projected to grow in the low-teens driven by continued significant growth in China -- where sales in the quarter are projected to climb 30% -- and strong performance in the markets of Southeast Asia. The region's dollar operating profit is expected to climb in the range of 25%.

> Commenting on the fourth quarter outlook, Ms. Jung said, "We are extremely pleased with the ongoing strength of our international markets and expect the momentum to continue for the balance of the year."

(emphasis supplied).

85.    On October 29, 2004 Avon issued a press release announcing its third quarter financial results and touting the positive contribution of Avon's international business. The release quoted defendant Jung as saying:

> "We are extremely pleased with the continuing strength of our global portfolio which has enabled us to deliver another quarter of outstanding results, despite sluggish sales in the U.S. Europe, Latin America and Asia Pacific all delivered double-digit growth in local-currency sales, units and dollar operating profit. Additionally, each of these regions achieved at least 200 basis points of operating margin expansion. The overall top and bottom line strength across these three key geographies contributed to the higher-than-anticipated performance in the third quarter."

86.    The October 29, 2004 press release reported that:

> The markets of Central and Eastern Europe delivered an exceptionally strong overall performance, with sales in Russia growing over 80%, or over 70% on a local- currency basis, in the quarter.
>
> * * *
>
> China continued its standout performance with sales growing 37% in the quarter. The markets of Southeast Asia were also strong performers with sales growth of 14%, and operating profit growth of nearly 60% following a 2003 Malaysian field reorganization. Operating profit for the region as a whole rose 29%, and operating margin expanded by 200 basis points to 17.1%.

87.    The press release quoted defendant Jung as saying:

> We are extremely pleased that the exceptional strength of our global geographic portfolio and the flexibility it provides will enable us to deliver another year of standout performance despite a difficult U.S. consumer environment and challenges in the U.S. Beyond Beauty segment. . . .
>
> We are very proud that 2004 is shaping up to be the third consecutive year in which earnings will grow at least 20%. Looking ahead, we see another strong year in 2005, and again expect to achieve our long-term annual targets of double-digit local-currency sales growth and at least 10% earnings per share growth as the transformation of Avon continues to take hold

around the world.

88.     Upon information and belief, at the same time that Defendants were publicly portraying Avon's business in a positive light, within the Company employees were working on plans to terminate Avon's matching contributions to the Plan and reduce employee bonuses because of the severe financial problems that Avon was facing.  Nevertheless, Defendants continued to issue positive public statements about the Company and its businesses.

89.     On November 11, 2004 Avon declared a regular quarterly dividend of $0.14 per share payable on December 1, 2004.

90.     On December 7, 2004 Avon issued a press release announcing its financial targets for 2005 through 2007 along with an update of its near-term business outlook.  In the press release, Avon said that it expected "earnings per share to advance at a rate of at least 10% per year in the 2005-2007 time frame, which marks the next phase of the company's Business Translation initiatives.  Avon also said that it expects local-currency sales to continue to grow by at least 10% per year in 2005- 2007, including the impact of category positioning in the U.S."

91.     Additionally, the press release commented very favorably on Avon's international business:

> Avon expects all international regions to finish the year with strong
> dollar-denominated performances in the quarter.  In Europe, sales
> and operating profit are tracking up by approximately 25% and
> 35%, respectively.  Latin America is projected to grow sales and
> operating profit in the high- single digits.  In Asia, sales and
> operating profit are projected to be up by approximately 10% and
> 20%, respectively.

92.     By the end of 2004, the price of Avon's stock had dropped from above $45 per share to under $40 per share but defendants continued their positive statements.

23

93.    On February 1, 2005 Avon announced that it was increasing its regular dividend

by 18% and that it would repurchase $1 billion of its common stock over the next five years.

The press release quoted defendant Jung as saying:

> "We're very pleased to increase Avon's dividend for the 15th
> consecutive year and to commit to a new stock repurchase
> program. These actions signify the exceptional strength of the
> company's cash flow from operations, which reached $883 million
> in 2004, and is expected to reach $1 billion in 2005 and $1.5
> billion in 2007. Today's announcement is indicative of our
> ongoing commitment to enhance shareholders' return on their
> investment in Avon."

94.    That same day, February 1, 2005, Avon issued a press release reporting "record"

fourth quarter earnings and its expectation of "standout growth in 2005":

> As announced in December, **Avon expects to deliver another
> year of standout growth in 2005, reflecting ongoing strength in
> its international operations**. Local-currency total revenues are
> projected to grow 10% year over year, driven by double-digit gains
> in units and active Representatives, with Beauty growth outpacing
> overall revenue growth. Operating margin is forecast to expand
> 50-80 basis points, and earnings per share are expected to be in the
> range of $1.95 - $2.00, with a 2005 effective tax rate of
> approximately 31%. Additionally, cash flow from operations is
> projected to reach a record $1 billion this year.
>
> * * *
>
> For 2005, International operations are projected to post another
> year of growth on growth, with revenue increasing mid-teens and
> operating profit expected to grow over 20%, on particular strength
> in the company's leading growth markets of Russia, China, Turkey
> and Brazil. Europe is expected to again be the company's growth
> leader-with revenue up in the low-20% range and operating profit
> growth in the mid-20% range. Latin America anticipates revenue
> growth in the range of 10% and operating profit growth in the mid-
> teens. **In 2005 Asia Pacific's revenue growth is projected to be
> in the low teens, with operating profit in the range of 25%.**
> (Emphasis added.)

95.     Also, on February 1, 2005, Avon held a conference call for investors during

which defendant Jung touted Avon's business in China:

> The standout performer for the region, for the quarter, and for the
> full year was China.  Fourth quarter sales grew 46%, operating
> profit increased more than 60% after significant investments of our
> market share.
>
> China's full-year 2004 sales increased to nearly 225 million and its
> operating margin improved 300 basis points.  Our proposition and
> opportunity in China continue to be extremely compelling.
> **Irrespective of the timing of the opening of direct selling, we
> expect our 2005 growth in that market to be in line with that of
> 2004, which would put China's revenue well over $300 million
> this year**.
>
> As you know, the industry is still awaiting the final government's
> regulations for the resumption of direct selling.  When issued, we
> believe that this new framework will benefit both the Chinese
> consumer and the direct selling industry.  **Very importantly, as I
> know, we've talked about before; we feel that Avon is very well
> positioned with our current business model. We believe that
> our 6,000 beauty boutiques will continue to be a powerful
> competitive advantage**. (Emphasis added.)

96.     In response to these positive announcements, Avon's stock price climbed back up

towards $45 per share.

97.     Defendant Corti took advantage of this positive news by selling approximately

204,224 shares of Avon stock for proceeds of $9,073,468 without disclosing material, non-public

adverse information about Avon.

98.     On March 2, 2005, Avon filed its annual report with the SEC on Form 10-K,

which was signed by the Individual Defendants and reaffirmed the Company's previously

announced financial results.

99.     On March 17, 2005, Avon issued a press release in which Avon commented

favorably on its business and its projected financial results for 2005:

Avon Products, Inc. (NYSE: AVP) today reaffirmed its earnings outlook for the first quarter and full-year 2005, with earnings in the first quarter of 2005 expected to increase 13% to $.35 per share, and full-year earnings projected to be in the range of $1.95 - $2.00 per share.

Andrea Jung, Avon's chairman and chief executive officer, said, "Looking ahead, on a full-year basis, we remain very comfortable with our earlier earnings-per-share projection in the range of $1.95 - $2.00. This outlook reflects our previously announced U.S. repositioning, strength in our international portfolio and continued opportunities associated with the next generation of Business Transformation."

100.    On April 8, 2005, Avon issued a press release in which the Company and defendant Jung touted its business in China:

The Chinese Ministry of Commerce and the State Administration for Industry and Commerce has officially approved Avon Products (China) Co., Ltd. to be the first company to test direct selling in Beijing, Tianjin, and Guangdong Province in April.

Andrea Jung, CEO of Avon Products Inc. (NYSE: AVP), said: "We are so excited that we have received the formal approval from the Chinese government. **We are extremely honored of this opportunity as it equally shows the government's confidence and trust in Avon as a responsible and reliable direct selling company in China. We will do our part and are committed to deliver the objective and expectation of the government and look forward to direct selling regulation.**"

(Emphasis added.)

101.    On May 2, 2005, Avon issued a press release in which Avon again positively portrayed its "strong operating profit growth" and its business in China:

Avon Products, Inc. (NYSE: AVP) today reported earnings for the first quarter of 2005 of $.36 per share, up 16% from last year's first-quarter earnings of $.31 per share and $.01 ahead of expectations due to strong operating profit growth.

Avon also raised its previous full-year 2005 earnings outlook to $2.12 -- $2.17 per share from $1.95 -- $2.00 per share, reflecting a second-quarter benefit of approximately $80 million, or about $.17

per share, relating to prior years' tax-audit settlements.

\* \* \*

Top line growth in Europe in the first quarter was impacted by the U.K., where revenues were 3% lower compared with the year-ago period as the U.K. anniversary the highly successful launch of a new Clinical Line and Wrinkle Corrector. Revenues in Central and Eastern Europe increased 27% in the quarter, with Russia up 24% on top of extraordinary 89% growth in the prior-year quarter.

\* \* \*

The Asia Pacific region posted first-quarter revenue growth of 10% in dollars and 8% in local currency, driven by gains in units and active Representatives of 16% and 12%, respectively. **Operating profit rose 20% and operating margin increased to 18.5%, up 150-basis points year over year. China, Avon's largest long-term growth opportunity, was again the biggest contributor to the region's growth, with revenue up nearly 40%. In April 2005, Avon China was approved as the first company to conduct a direct-selling test in that market.**

Second-Quarter Outlook

Avon said that revenue growth in the second-quarter 2005 should accelerate ahead of the first quarter, with dollar-denominated and local-currency growth expected to be in the ranges of 10% and 6%, respectively. Operating profit is forecast to increase approximately in line with revenue growth, including an acceleration of consumer investments in emerging markets as well as funding for the China direct-selling test.

Avon said that it expects U.S. results in the second quarter to be in line with those of the first quarter as it continues to reposition the U.S. business for improved performance in the second half of this year and a return to profitable growth in 2006. With regard to the second-quarter outlook for each international region, the company said that Europe's revenue is projected to grow in the high teens, with operating profit increasing slightly ahead of revenue. Latin America's revenue and operating profit should each increase in the mid-teens. Asia Pacific's revenue is expected to be up double-digits while operating profit should grow in the high-single digits.

In addition, Avon said that second-quarter earnings are forecast to be in the range of $.66 per share, reflecting a non-cash benefit of

approximately $80 million, or about $.17 per share, relating to prior years' tax-audit settlements. This compares to earnings of $.49 per share in last year's second quarter, which included a tax benefit of $.05 per share. The company said that additional tax settlements are possible during 2005, which could result in further benefits.

Commenting on the year, Andrea Jung, Avon's chairman and chief executive officer said, "We're pleased with Avon's performance in the first quarter, especially given the very challenging year-over-year comparisons. Looking ahead, we're projecting that local-currency revenue will accelerate, as increased innovation in our second-half product pipeline drives stronger Beauty sales. Continuing strong results in our international regions are offsetting U.S. performance during this period of repositioning, with our emerging markets once again expected to deliver another full year of stand-out revenue growth," she said.

(Emphasis added.)

102.     On May 3, 2005, Avon filed its quarterly report with the SEC on Form 10-Q, which was signed by defendant Corti and reaffirmed the Company's previously announced financial results.

103.     At a time when Avon should have been providing more information to its investors and employees, the Company announced on June 9, 2005 that it would no longer provide mid-quarter updates of its business performance.

## The Truth Begins To Emerge

104.     On July 19, 2005, Avon issued a press release which for the first time disclosed problems with the Company's business that had been adversely impacting the Company. The press release reported that Avon's revenues in the second quarter of 2005 were below expectations for two reasons:

(A) an unexpected temporary decline in China as Beauty Boutique owners reacted with concern to the imminent resumption of direct selling in that country; and

    (B)  lower-than-anticipated revenue growth in Central and Eastern Europe resulting from underperformance of several key marketing offers as well as delayed expansion into new geographies within Russia.

    105.    The press release quoted Defendant Jung as saying that the problems in China were unexpected and that Avon was taking steps to address the problems in Central and Eastern Europe:

    "While the U.S. and Latin America performed in line with our expectations, the situation in China was clearly unexpected.  We are moving rapidly to assure our Beauty Boutique owners that they will have an opportunity to earn as much or more with Avon in our future model, and believe this will be a transitional issue.  We continue to feel privileged to have been chosen as the first company authorized to conduct a direct-selling test and our optimism about the long-term $1 billion opportunity in China remains unchanged.  In Central and Eastern Europe, where our topline momentum continues to be strong and we remain confident in our beauty leadership position, we have significantly enhanced our marketing offering and implemented aggressive plans to accelerate order growth in the back half of the year."

    106.    Commenting on the Company's revised outlook for the rest of 2005 , Ms. Jung said:

    "We are encouraged by some recent trends in the U.S.  In addition, we expect our current recovery actions to improve performances in China and Central and Eastern Europe as we move through the balance of the year.  If all of these actions and trends play out in the back half of the year, we can achieve the top end of our earnings projection.  However, given the volatility we've experienced in recent quarters on a number of fronts, we believe that it is prudent to allow for further risk, thus the breadth of our forecast."

    Ms. Jung added, "Looking ahead, the broad strength of Avon's global portfolio remains a significant competitive advantage and we remain confident in Avon's unique growth and transformation strategies.  Over the long term, we expect to deliver high-single-digit local-currency revenue growth, enabled by a greater step-up in strategic spending support and thoughtful trade-off between our

> revenue growth and margin targets, including evaluation of our
> enterprise expense base.  We remain confident that Avon's revenue
> growth will continue to well outpace the overall Beauty market,
> supported by appropriate levels of investment while also delivering
> margin expansion over the long term."

107.    On this news Avon shares fell $5.30 per share, or 14.48 percent, on July 19,

2005, to close at $31.30 per share.  Since then, Avon's stock price has continued to fall as the

market learned the extent of Avon's problems.  By October 7, 2005 Avon's stock price was

trading at approximately $26.00 per share, far below its trading price during the Class Period.

108.    As a result, Plaintiff, the Class and the Plan have all been damaged and have seen

the value of the Plan assets plummet.

109.    Defendants, however, took advantage of their knowledge as insiders by selling

hundreds of thousands of Avon shares during the Class Period for gross proceeds of more than

$40 million.

110.    At the same time that they were using their knowledge about the Company's

problems to sell significant amounts of Avon stock for their own benefit, these Defendants

withheld material information from the Plan, plaintiff and other members of the Class.

### Defendants Are Liable For All Imprudent Investments

111.    Defendants are liable for imprudent investments made by the Plan, even though

the Participants directed their individual contributions to the Plan, because the Plan and the

Defendants did not shift liability for imprudent investments by the Plan to Participants under

ERISA § 404(c), 29 U.S.C. § 1104(c).  Thus, Defendants' liability for losses is the same as the

liability of a pension fund manager in a traditionally defined benefit "pension" plan.

112.    Although fiduciaries can shift liability for imprudent investments from themselves

to the Participants under § 404(c), Defendants failed to shift liability to Participants for

30

imprudent investment decisions because they failed to comply with Section § 404(c) for various reasons, including:  (i) they failed to adequately declare that the Plan was a 404(c) plan; (ii) Defendants negligently failed to disclose to Participants all material information necessary for Participants to make investment decisions that they were not precluded from disclosing under applicable law; and (iii) Defendants failed to provide an adequate description of the investment objectives and risk and return characteristics of the Plan.

113.    Because Defendants did not comply with § 404(c), Defendants are liable for losses suffered as a result of the Plan's imprudent investments, regardless of whether participants selected the investments made by the Plan for participants' individual accounts.

114.    Further, the act of designating investment alternatives is a fiduciary function regardless of a Plan's purported status as an ERISA § 404(c) status.  The responsible Plan fiduciaries are subject to ERISA's general fiduciary standards in initially choosing and/or continuing to designate investment alternatives offered by the Plan.

115.    As Avon stock lost a significant amount of its value, the Plan suffered devastating losses.  Hundreds or thousands of participants lost a substantial portion of their retirement savings.  Defendants are liable for those losses which were caused by their breaches of fiduciary duty.

## COUNT I

### Defendants Breached Their Fiduciary Duties By Designating Avon Stock As An Investment Option And Permitting The Plan To Invest In Avon Stock

116.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if they were fully set forth in this Count.

117.    Defendants breached their fiduciary duties by allowing the Plan to purchase and hold Avon shares during the Class Period and by allowing the Avon shares to remain as

investment options under the Plan, because Avon stock was an imprudent investment for the Plan whose purpose was to provide for employee retirement income security.

118.    As a result, Defendants should have terminated Avon stock as an investment option, halted the purchase of Avon shares and sold all their shares in Avon stock.

119.    To the contrary, Defendants failed to act in the best interest of the Plan and the Class members.

120.    To the extent that Defendants possessed material adverse nonpublic information, they should have prevented the Plan from purchasing additional Avon shares. They also should have directed the Plan to sell all of its Avon shares and disclosed this nonpublic information prior to any sales by the Plan. Had they done so, the Plan would have limited its losses substantially, even though the price might have dropped somewhat upon disclosure.

121.    Defendants were fiduciaries who breached their fiduciary duties in that they should have known the facts as alleged above and should have know that the Plan should not have invested such large amounts in Avon stock.

122.    Defendants also breached their fiduciary duties in allowing the Trustee to continue to direct the Company Match portion of the Plan to the purchase of Avon stock while they should have known that the Avon stock price was artificially inflated and, as a result, the Participants received fewer shares than they were entitled to under the terms of the Plan. By the time that Defendants discontinued the Company's match portion of the Plan, Plaintiff, the Class and the Plan had already been damaged.

123.    As a consequence of Defendants' breaches, the Plan suffered losses.

124.    Defendants are liable to personally make good to the Plan any losses to the Plan resulting from each breach under ERISA § 502(a)(2).

125.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief to the Class.

## COUNT II

### Failure To Prudently And Loyally Manage the Assets Of The Plans - Breaches Of Fiduciary Duties In Violation Of ERISA § 404 – All Defendants

126.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if they were fully set forth in this Count.

127.    At all relevant times, as alleged above, the Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

128.    Defendants were responsible for selecting, maintaining and monitoring the Plan's investment options, including the option to purchase and to hold Avon securities.

129.    Defendants exercised discretionary authority and/or control over managing the Plan or disposing of the Plan's assets and were, during the Class Period, responsible for ensuring that investment options made available to participants in the Plan were prudent.  Defendants were responsible for ensuring that all investments in the Avon securities in the Plan were prudent and, as a result, Defendants are liable for losses incurred as a result of such investments being imprudent.

130.    In direct violation of their duty of loyalty to the Plan and its members, Defendants failed to diverge from the Plan documents and/or directives that they reasonably should have known would lead to an imprudent result or would otherwise harm Plaintiff and members of the Class.  Defendants, either themselves or through persons they direct or control, blindly followed Plan documents and directives, leading to an imprudent result that harmed the Plan's participants and beneficiaries.

131.    Defendants breached their duties to prudently and loyally manage the assets of the Plan. During the Class Period, upon the exercise of reasonable care, Defendants should reasonably have known that investment in the Avon securities was imprudent in that any such investment was unsuitable and inappropriate for either participants or Company contributions to the Plan. During the Class Period, Defendants, in violation of their fiduciary duties, continued to offer and require the Avon securities as an investment requirement for the Plan and to direct and approve Plan investment in the Avon securities, instead of other investments. Despite the imprudence of any investment in the Avon securities during the Class Period, Defendants failed to take adequate steps to prevent the Plan, and indirectly the Plan's participants and beneficiaries, from suffering losses as a result of the Plan's investment in Avon securities.

132.    Defendants also breached their duty of loyalty by failing to administer the Plan with single-minded devotion to the interests of Plaintiff and members of the Class, regardless of Defendants' own interests.

133.    Defendants also breached their fiduciary duties by failing to disclose that they had failed to prudently and loyally manage the assets of the Plan in the exercise of their discretion with respect to the Avon securities.

134.    As a direct and proximate result of Defendants' breaches of their fiduciary duties to Plaintiff and the Class, the Plan, and indirectly Plaintiff and the members of the Class, suffered damages for which Defendants' are liable.

### COUNT III

**Failure To Monitor The Plan And Provide Accurate
Information -- Breaches Of Fiduciary Duties In Violation Of ERISA § 404**

135.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if they were fully set forth in this Count.

136.   During the Class Period, Defendants were fiduciaries within the meaning of ERISA §3(21)(A), 29 U.S.C. § 1002(21)(A).

137.   The duty of the fiduciary includes at least:

(a)   a duty not to misinform;

(b)   a duty to inform when the fiduciary knows or should know that silence might be harmful; and

(c)   a duty to convey complete and accurate information material of the circumstances to participants and beneficiaries.

138.   Defendants negligently misrepresented to participants the riskiness of their investments in the Avon stock by failing to provide an adequate description of the investment objectives and risk and return characteristics of Avon stock.  Defendants failed to disclose that the performance and value of the Avon stock in participants' accounts were substantially affected by the facts and risks alleged above.

139.   Defendants breached their fiduciary duties in that they negligently made material misrepresentations and negligently failed to disclose material information to participants concerning the Plan's investment options as alleged above.

140.   In breach of their fiduciary duties, Defendants also made negligent misrepresentations and negligently failed to disclose material information to participants.

141.   Defendants should have known that their negligent misstatements and nondisclosures alleged above would artificially inflate the market price of Avon securities, and that the price the Plan paid for Avon shares would likewise be inflated.  As a result of these negligent misrepresentations and nondisclosures, the Plan's purchases of Avon stock were imprudent because the shares cost more than their true value.

142.    Moreover, Defendants should have known that when the market learned the truth about Avon's problems, the market price of Avon securities – and the value of the Plan – would drop which would further cause the investments in Avon stock to be imprudent.

143.    The Plan, and the participants acting on behalf of the Plan, relied upon, and are presumed to have relied upon, Defendants' representations and nondisclosures to their detriment.

144.    As a consequence of Defendants' misrepresentations and nondisclosures, the Plan suffered losses.

145.    Defendants are personally liable to make good to the Plan any losses to the Plan resulting from each breach.

146.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief.

## COUNT IV

### Failure To Monitor The Plan And Provide The Administrators Of The Plan And Other Fiduciaries With Accurate Information – Breaches Of Fiduciary Duties In Violation Of ERISA § 404

147.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if they were fully set forth in this Count.

148.    During the Class Period Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

149.    By virtue of their fiduciary responsibilities, Defendants also were bound to monitor other fiduciaries and to provide them with information sufficient to perform their duties overseeing the Plan and its investments.

150.    Defendants breached their duties to monitor and inform by:

(a)    Failing to ensure that the monitored fiduciaries had access to knowledge about Avon's risk associated with its international business, as alleged above, which made the Avon securities an imprudent investment;

(b)    Failing to ensure that the monitored fiduciaries appreciated the increased risk posed by the significant investment by rank and file employees in the Avon securities; and

(c)    Failing to disclose to the monitored fiduciaries accurate information about the operations of and risks to Avon that Defendants reasonably should have known the monitored fiduciaries needed to make sufficiently informed decisions about what investment options the Plan should offer.

151.    Defendants are liable as co-fiduciaries because:

(a)    They participated in the fiduciary breaches by their fellow Defendant-fiduciaries in the activities implicated in this Count;

(b)    They enabled the breaches by these Defendants; and

(c)    They reasonably should have known of these breaches yet made not effort to remedy them.

152.    As a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plan, and indirectly Plaintiff and the members of the Class, suffered damages for which Defendants are liable.

## COUNT V

### Failure To Provide Complete And Accurate
### Information To The Plan's Participants And Beneficiaries --
### Breaches Of Fiduciary Duties In Violation Of ERISA §§ 404 And 405

153.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if they were fully set forth in this Count.

154.    During the Class Period, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. §1002(21)(A).

155.    During the Class Period Defendants' fiduciary duties bound them to ensure that communications by and about the Plan and its assets were truthful, complete and not misleading, including information concerning the investment options the Plan offered.

156.    Throughout the Class Period, Defendants failed to provide participants in the Plan with complete and accurate information regarding Avon's operations and risks that was necessary for participants in the Plan to accurately assess the quality of an investment in Avon securities. Defendants conveyed false and misleading material information to the investing public and to Plaintiff and the Class, regarding the soundness of Avon securities and the prudence of investing retirement savings in Avon securities. Because large percentages of the assets of the Plans were invested in Avon securities during the Class Period, losses therefrom materially affected the value of the retirement assets of Plaintiff and the Class.

157.    Defendants' fundamentally deceptive affirmative misrepresentations and omissions were material to Plaintiff's and the other Class members' determinations about investing in or maintaining their investments in the Avon securities. As such, Plaintiff and members of the Class are presumed to have relied to their detriment on Defendants' misleading statements, acts and omissions.

158.    As a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plan, and indirectly Plaintiff and the members of the Class, suffered damages for which Defendants are liable.

## COUNT VI

**Failure To Act Exclusively In The Interests Of Participants In The Plan --
Breaches Of Fiduciary Duties In Violation Of ERISA §§ 404 And 405**

159.   Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if they were fully set forth in this Count.

160.   During the Class Period, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. §1002(21)(A).

161.   Defendants were duty bound to act with undivided loyalties to the Plan, binding them to discharge their responsibilities solely in the interest of Plaintiff and the members of the Class and for the exclusive purpose of providing benefits to the Plan, Plaintiff and the Class.

162.   Defendants breached their duty of loyalty by:

(a)   Failing to engage independent fiduciaries who could make independent judgments concerning the Plan's investments in Avon securities;

(b)   Failing to notify appropriate federal agencies of the facts and transactions which made Avon securities an unsuitable investment for the Plan;

(c)   Failing to take such other steps as were necessary to ensure that the interests of Plaintiff and members of the Class were loyally and prudently served;

(d)   With respect to each failure listed above, Defendants failed to adequately inform Plaintiff and members of the Class in order to prevent general investors, creditors and others from discovering Avon's risk and financial weaknesses;

(e)   By otherwise placing the interests of Avon and themselves above the interests of the participants with respect to the investments of the Plan in the Avon securities; and

(f)   As a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plan, and indirectly Plaintiff and the members of the Class, suffered damages for which Defendants are liable.

## COUNT VII

### Defendants, Other Than The Trustee, Are Liable As Co-Fiduciaries For The Breaches Of Fiduciary Duties By The Other Defendants

163.   Plaintiff repeats and realleges the allegations contained above as if they were set forth in full in this Count.

164.   Any allegation in this Claim that any defendant had actual knowledge is limited to this Claim and is not intended to alter or amend any allegation contained in any other part of this complaint.

165.   Each Defendant other than the Trustee is liable for the acts of the other Defendants as a co-fiduciary.  Upon information and belief, each defendant other than the Trustee (a) knowingly participated in, or knowingly undertook to conceal, the breaches of the other fiduciaries, (b) by virtue of his own breach of fiduciary duty, enabled the other Defendants to breach their fiduciary duties, and/or (c) had knowledge of other Defendants' breaches and failed to take reasonable steps to remedy them.

166.   Upon information and belief, Defendants knew that Avon's negligent misstatements and nondisclosures would artificially inflate the market price of Avon securities and that the price the Plan paid for Avon shares would likewise be inflated.  Upon information and belief Defendants knew that as a result of these negligent misrepresentations and nondisclosures, the Plan's purchases of Avon stock were imprudent because the shares cost more than their true value.  Moreover, upon information and belief, Defendants knew that when the

market learned this undisclosed information, the market price of Avon securities – and the value of the Plan – would drop, which further caused investment in Avon stock to be imprudent.

167.    Defendants are liable as co-fiduciaries for the other Defendants' breaches of fiduciary duties because the Defendants:  (a) knowingly participated in, or knowingly undertook to conceal, the breaches of the other fiduciaries, (b) by virtue of their own breaches of fiduciary duties, enabled the other Defendants to breach their fiduciary duties, and (c) had knowledge of the other Defendants' breaches and failed to take reasonable steps to remedy them as follows:

(a)    The Director Defendants enabled the other Defendants to breach their fiduciary duties of truthful disclosure by virtue of their own breaches of their fiduciary duty to monitor the fiduciaries they appointed.

(b)    Avon enabled the other Defendants to breach their duties of truthful disclosure by failing to exercise its power and fulfill its duties as a plan fiduciary to take reasonable actions to prevent the other Defendants from breaching their specific duties.  As a co-fiduciary and an Administrator of the Plan, Avon failed to make proper inquiries regarding the Plan's disclosures, management and investment in Avon stock and remained inactive while other fiduciaries breached their duties of truthful disclosure.

(c)    The Retirement Committee and its members enabled the other Defendants, including fellow Committee Members and the Retirement Committee itself, to breach their duties of truthful disclosure by failing to exercise their power and fulfill their duties as a plan fiduciaries to take reasonable actions to prevent the other Defendants from breaching their specific duties.  As co-fiduciaries of the Plan, each of the Committee Defendants failed to make proper inquiries regarding the Plan's disclosures, management and investment in Avon stock and remained inactive while other fiduciaries breached their duties of truthful disclosure.

(d)     Avon as a corporate entity, possessed actual knowledge of the other defendant's fiduciary breaches because the knowledge and actions of other Defendants – as corporate agents, officers, directors and employees of Avon – are attributable to Avon.  Although Avon had actual knowledge of the fiduciary breaches set forth in this Complaint, it failed to take reasonable steps to remedy those breaches.

(e)     On information and belief, the Retirement Committee and its members possessed actual knowledge of the other Defendants' fiduciary breaches in that the Retirement Committee and its members were senior employees of Avon.  Although the Retirement Committee and its members had actual knowledge of the fiduciary breaches, they failed to take reasonable steps to remedy those breaches.

168.    The Individual Defendants, the Retirement Committee and its members participated in and/or enabled the breaches of fiduciary duty by the Defendants other than the Trustee, and/or, upon information and belief, had knowledge of the other Defendants', other than the Trustee's, breaches and failed to take reasonable steps to remedy them.  The Individual Defendants, the Retirement Committee and its members authorized or signed Avon's SEC filings which contained material misrepresentations and omissions.

169.    As a consequence of the Defendants' breaches, the Plan suffered losses.

170.    The Defendants are liable to personally make good to the Plan any losses to the Plan resulting from each breach under 29 U.S.C. § 502(a)(2).

## COUNT VIII

### Prohibited Transactions
### In Violation Of ERISA § 406

171.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if they were fully set forth in this Count.

172.   By virtue of all the facts and events alleged herein, Defendants, in connection with their actions and omissions in authorizing and causing the Plan to continue to offer and require Avon securities as an investment during the Class Period and permitting and requiring Plaintiff and members of the Class to invest in Avon securities at a time when Defendants reasonably should have known about the significant risk to Avon – material facts that were undisclosed or misrepresented to Plaintiff and the Class – and that as a result, the prices per share at which the Plan was acquiring Avon securities grossly exceeded fair market value, caused the Plan to engage in transactions that constituted direct or indirect sales or exchanges of property between the Plan and the party-in-interest, in violation of ERISA § 406(a), 29 U.S.C. § 1106(a).

173.   Because the price Defendants caused the Plans to pay for such securities was materially, artificially inflated, exceeding fair market value, the prohibited transactions are not exempt under the provisions of ERISA § 408(e)(1), 29 U.S.C. § 1108(e)(1).

174.   Avon is liable for this violation as a "party in interest" as defined in ERISA § 3(14)(c) for participating in the prohibited transactions.

175.   During the Class Period, Avon securities were artificially inflated in value such that Defendants continued to engage in prohibited transactions by causing the Plan to pay an artificially inflated price for Avon securities.

176.   During the Class Period, the Plan invested, upon information and belief, millions of dollars in both participant and company-matching contributions in Avon securities, at artificially inflated prices.  The Plan and its participants thus over-paid for their "participation interests" in the Plan.

177.   Because the Plan's acquisition of Avon securities at artificially inflated prices were prohibited transactions, a per se violation of ERISA § 406(a), 29 U.S.C. §1106(a), under

ERISA §§ 409(a) and 502(a)(2)-(3), 29 U.S.C. §§ 1109(a) and 1132(a)(2)-(3), Plaintiff seeks on behalf of himself and the members of the Class to rescind all transactions purchasing or acquiring Avon securities.

178.    Further, to restore the Plan and its participants and beneficiaries to the positions they would have been in had Defendants not engaged in the prohibited transactions, the Plan is entitled to recover the amount that the contributions used to purchase Avon securities for the Plan would have earned had such amounts been invested in suitable investment options.

## SECTION 404(c) DEFENSE INAPPLICABLE

179.    The Plan suffered a loss, and Plaintiff and the members of the Class suffered losses, because substantial assets in the Plan were invested in Avon securities during the Class Period as a direct or proximate result of Defendants' breaches of the fiduciary duties they owed to Plaintiff and members of the Class.

180.    As to contributions invested in the Avon securities, Defendants were responsible for the prudence of investments offered under the Plan unless participants in the Plan, themselves, effectively exercised informed control over the assets in the Plan in their individual accounts pursuant to ERISA § 404(c), 29 U.S.C. § 1104(c) and the regulations promulgated thereunder.

181.    Defendants did not comply with those provisions. Rather than taking the necessary steps to ensure effective participant control by complete and accurate disclosure of material information, Defendants did the opposite. As a consequence, participants in the Plan did not have informed control over the assets of the Plan that were invested in Avon securities and Defendants remained entirely responsible for ensuring that such investments were and remained prudent.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of other members of the Class, prays for judgment as follows:

1.     Declaring this action to be a proper class action maintainable under Rule 23 of the Federal Rules of Civil Procedure;

2.     Declaring that Defendants, together and individually, breached their fiduciary duties under ERISA to Plaintiff and members of the Class;

3.     Declaring that Defendants, together and individually, are not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B);

4.     Compelling Defendants to reimburse Plaintiff, the Class and the Plan for all losses resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the assets of the Plan, and to restore to the Plan all profits Defendants made through the use of the assets of the Plan, and to restore to the Plan all investment profits that Plaintiff and member of the Class would have made if Defendants had fulfilled their fiduciary obligations;

5.     Imposing a constructive trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as the result of any Defendant's breach of fiduciary duty;

6.     Enjoining Defendants, together and individually, from any further violations of their fiduciary duties under ERISA;

7.     Awarding actual damages in the amount of any losses the Plan suffered, to be allocated among the individual accounts of Plaintiff and the members of the Class in proportion to the losses of those accounts;

8.      Awarding Plaintiff and the members of the Class damages as a result of the wrongs complained of herein, with pre-judgment and post-judgment interest;

9.      Awarding Plaintiff and the other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

10.     Awarding Plaintiff and the other members of the Class such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated: October 7, 2005

SQUITIERI & FEARON, LLP


BY: _____
          Stephen J. Fearon, Jr. (SF-8119)
          32 East 57th Street
          12th Floor
          New York, New York 10022
          Tel:  212-421-6492
          Fax:  212-421-6553

Counsel for Plaintiff